IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KARONDA SMITH                                                          PLAINTIFF

v.                              No. 5: 11CV00160 JLH-JTR

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                        DEFENDANT

<u>OPINION AND ORDER</u>

On June 12, 2008, Karonda Smith applied for disability income benefits and

supplemental security income.  Tr. 107, 110.  Smith's applications were denied initially and

on reconsideration.  Tr. 58-59, 60-61.  Smith asked for a hearing before an Administrative

Law Judge.  Tr. 75.  During the hearing, Smith and a vocational expert testified.  On January

22, 2010, the ALJ issued an unfavorable decision, concluding that Smith was not disabled

under the Social Security Act.  Tr. 8.

Smith then submitted additional evidence to the Appeals Council and asked for

review of the ALJ's decision.  The Appeals Council determined Smith's new evidence

provided no basis for changing the ALJ's decision and denied Smith's request.  Tr. 1.  The

ALJ's decision became the final decision of the Commissioner for the purpose of seeking

judicial review pursuant to 42 U.S.C. § 405(g).  Smith initiated this case on June 23, 2011,

seeking judicial review of the Commissioner's decision.

**Scope of judicial review**.  In reviewing a decision denying an application for

disability benefits, the Court must determine whether substantial evidence supports the

Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole' "); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**The disability-determination process**. The Commissioner's regulations set forth a five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI).

In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). "The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

**Smith's work history and medical history**. Smith worked as a stitcher at Beeville Shoe South until October 2006. The record does not reflect why Smith stopped working at Beeville Shoe South. From May 2007 to May 2008, Smith worked as a receptionist at a funeral home. Tr. 138 (reporting that she worked as a receptionist as Richardson Memorial Funeral Home from May 29, 2007 to May 12, 2008); *id*. at 190 (reporting on Apr. 28, 2008

3

that she works at a funeral home).   In June 2008, Smith applied for disability benefits, Tr. 107, 110, and attributed her alleged disability to mental problems, Tr. 123.   Smith alleged she became disabled on February 1, 2007; however, she received unemployment benefits until the first quarter of 2009.   Tr. 31, 113.   Receiving unemployment benefits required Smith to certify that she was able to work.   *See* Ark. Code Ann. § 11-10-507(3) (setting eligibility conditions for unemployment benefits and including as a condition that the claimant "is unemployed, is physically and mentally able to perform suitable work, and is available for such work").

Although Smith alleged she stopped working because of mental problems, Tr. 124, she later testified that she stopped working because of swelling in her feet and back problems, Tr. 37.   The record reflects that Smith sought mental health treatment from the Southeast Arkansas Behavioral Healthcare System on February 29, 2008.   Tr. 193. There, Smith was treated for depression.   The record also includes a MRI showing degenerative disc disease in Smith's lumbar spine, thus confirming Smith's complaint of back problems. Tr. 181.   The record does not include medical evidence about swelling in the feet.

**The Commissioner's decision**.   At step one of the disability-determination process, the ALJ determined that Smith had not engaged in substantial gainful activity since her alleged onset date of February 1, 2007.   Tr. 13.   Although Smith attributed her alleged disability to mental problems, Tr. 123, the ALJ determined at step two that Smith's ability to work was impaired by degenerative disc disease at L4-L5 (herniated disc pulposus),

4

obesity, major depression, and gastroesophageal reflux.  Tr. 13.  At step three, the ALJ

found Smith's impairments were severe, but the impairments did not meet or equal a listed

impairment.  Tr. 14.

The ALJ questioned the credibility of Smith's statements about the limiting effects

of her conditions, Tr. 18-19, and determined that Smith had the RFC to perform less than

a full range of sedentary work, Tr. 16.  Relevant to the issues in this case, the ALJ

determined Smith could: understand, remember, and carry out simple job instructions;

make judgments in simple work-related situations; respond appropriately to co-workers

and supervisors with only incidental contact which is not necessary in the performance of

work; and respond appropriately to minor changes in the usual work routine—with no

contact with the general public.  Tr. 16-17.

The ALJ determined Smith could no longer do her past relevant work, but she was

capable of making a successful adjustment to other work that exists in significant numbers

in the national economy.  Tr. 20.  Thus, the ALJ concluded that Smith was not disabled.

Tr. 20-21.

**Smith's allegations of error**.  Smith complained about the following aspects of the

Commissioner's decision:  (1) the weight given to a treating physician's opinion, and (2) the

Commissioner's consideration of new evidence.  Based on these complaints, Smith

maintained substantial evidence does not support the Commissioner's conclusion that she

is not disabled.  Smith also maintained the Commissioner's decision does not comport with applicable legal standards.

**Smith's complaint about a treating physician opinion**.  Smith argued that the ALJ failed to comply with the Commissioner's regulations for evaluating an opinion by treating physician Stephen A. Broughton.  Document #9, at 11.  Dr. Broughton is a staff psychiatrist at Southeast Arkansas Behavioral Healthcare System.  Dr. Broughton began treating Smith on August 7, 2008.  Tr. 187.  Dr. Broughton diagnosed Smith with major depressive disorder.  Tr. 187.  Dr. Broughton's treatment plan included medication management and individual therapy.

Smith points to an opinion set out in a mental impairment questionnaire.  Tr. 197. Dr. Broughton completed the questionnaire five months after he began treating Smith. Among other things, Dr. Broughton opined that Smith would miss work more than three times per month.  Tr. 203.  This opinion is significant because the vocational expert testified that a person will lose her job if she starts missing more than a day of work per month.  Tr. 56. The ALJ rejected the opinion.  Smith argued that the ALJ should have given the opinion controlling weight.  Document #9, at 14.

The Commissioner's regulations call for "more weight" for an opinion from a treating physician than a non-treating physician because those "sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).  The regulations direct the ALJ to give a treating-source opinion controlling weight so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).  If the ALJ does not give a treating source opinion controlling weight, the ALJ must provide good reasons for not doing so.  *See* 20 C.F.R. § 404.1527 (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).

The ALJ in this case provided good reasons.  As reasons for rejecting the opinion, the ALJ stated that Dr. Broughton did not specify why Smith would miss work three times or more per month and that Dr. Broughton's opinion was inconsistent with Smith's report on September 4, 2008 that she was doing "pretty well."  Tr. 17.  The ALJ made the following additional comments:

> Here, the possibility always exists that a psychiatrist may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, it is a possibility that should be noted pertaining to Dr. Broughton's statements.

Substantial evidence supports the ALJ's consideration of the opinion because Dr. Broughton's treatment notes show that Smith's symptoms improved with medication management and psychotherapy.  For example, three months before Smith testified that she was sleeping "a little bit better," Dr. Broughton reported that Smith stated she was doing "much better." Tr. 46, 282.  Smith denied having hallucinations or suicidal thoughts, and reported that her sleep and appetite had "much improved." Tr. 282.  Smith consistently reported "doing well." *See* Tr. 187 (reporting on Aug. 7, 2008 that she was doing "pretty well," but was frustrated and angry "at times" and stating that she lost her home in a tornado); *id*. at 185 (stating on Sept. 4, 2008 that she was doing "pretty well" and reporting that her sleep had improved and her appetite was good); *id*. at 228 (reporting on Apr. 23, 2009 that she was doing "fairly well," but was still a little irritable and did not sleep as well as she would like); *id*. at 282 (stating on July 2, 2009 that she was doing "much better" and reporting improved sleep and appetite).  Smith's consistent reports of doing well was inconsistent with an opinion that Smith would miss work more than three times per month.  To the extent Dr. Broughton's opinion had evidentiary value, that value was limited to the early stage of Smith's treatment.

Although Smith contended "the ALJ summarily dismissed Dr. Broughton's medical opinion in its entirety without any mention, much less analysis [of the applicable regulations,]" Document #9, at 13, the ALJ's opinion reflects a careful consideration of not only the opinion expressed in the mental impairment questionnaire, but of all

Dr. Broughton's treatment notes.  For example, the ALJ's opinion recognized that people with depression often experience symptoms like impaired memory, difficulty in concentrating, and deficits in social functioning.  *See* 14-178 Virginia M. V. Buki & Laura Obiso, *Attorneys' Textbook of Med*. P 178.50 (3d ed.) (listing depression's symptoms as "hopelessness, low self-esteem, impaired memory, concentration difficulty, anxiety, and preoccupation with negative thoughts"); *Taber's Cyclopedic Med. Dictionary* 478 (Clayton L. Thomas ed., 16th ed. 1989) (including the inability to concentrate and pervasive deficits in social functioning as symptoms of depression).  Recognizing such symptoms, the ALJ determined that Smith could: understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; respond appropriately to co-workers and supervisors with only incidental contact which is not necessary in the performance of work; and respond appropriately to minor changes in the usual work routine—with no contact with the general public.  Tr. 16-17.  Notwithstanding the ALJ's other reasons for rejecting the opinion set forth in the mental impairment questionnaire, the inconsistency of the opinion with treatment notes sufficiently supports the ALJ's consideration of the opinion.  The ALJ did not err in refusing to give controlling weight to Dr. Broughton's opinion expressed in the questionnaire.

To the extent Smith also complained about the ALJ's consideration of nurse Latasha Hall's opinion—that it is doubtful Smith can maintain employment—the ALJ was not required to give the opinion controlling weight because a nurse is not an acceptable medical

source under the Commissioner's regulations. *See* 20 C.F.R. § 404.1513(d)(1); 20 C.F.R. § 416.913(d)(1) (both regulations listing nurse-practitioners under "other medical sources").

**Smith's complaint about new evidence**. Smith also argued that the Appeals Council failed to comply with the Commissioner's regulations about new evidence. Document #9, at 15. In particular, Smith complained that the Commissioner did not consider a treatment note by Dr. Harold H. Chakales. Smith asked the court to remand this case for consideration of Dr. Chakales's treatment note.

"Under [the Commissioner's regulations], if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990). Dr. Chakales's treatment note was new, relevant and related to the period on or before the date of the ALJ's decision because the note documented findings about Smith's back condition before the ALJ's decision became final.

The record shows the Appeals Council considered Dr. Chakales's note because the Appeals Council acknowledged receiving the additional evidence, added the additional evidence to the record, stated that it considered the additional information, Tr. 1, reported that the new evidence did not provide a basis for changing the ALJ's decision, Tr. 2, and referred to the new evidence in an attachment to its order, Tr. 5. By doing so, the Appeals

Council complied with the Commissioner's regulations. *Accord Baker v. Astrue*, No. 5:10CV194 SWW, 2011 WL 4434530, at *2 (E.D. Ark. Sept. 23, 2011) (determining that the Appeals Council complied with the Commissioner's regulations where the Appeals Council acknowledged receiving the additional evidence, added the new evidence to the record, stated that it considered the additional information, determined the evidence did not provide a basis for changing the ALJ's decision, and referred to the new evidence in an attachment to its order).

"Where, as here, the Appeals Council considers new evidence but denies review, [the court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). The ALJ's decision in this case was supported by substantial evidence on the record as a whole, including Dr. Chakales's treatment note, because the note provided no basis for questioning the ALJ's determination. In actuality, Dr. Chakales's treatment note contributed little in terms of documenting Smith's conditions because it reported the results of an earlier MRI, diagnosed Smith with lumbar disc syndrome at L4-L5, described Smith as obese, and recommended a 100-pound weight loss. Tr. 177-78. Those aspects of Dr. Chakales's note confirmed what the record already showed: the presence of lumbar disc syndrome and obesity.

The referenced MRI showed degenerative changes in the lumbar spine and abnormal findings at L4-L5, with bulging and degenerative disc disease, Tr. 181; that is, the MRI

showed a herniated disc.  The ALJ's consideration of the MRI is reflected in the ALJ's step-two finding that Smith's ability to work is impaired by degenerative disc disease and the step-four determination limiting Smith to less than a full range of sedentary work.

The record before the ALJ also included evidence that showed Smith was obese. Smith testified that she was 5'2" and weighed 194 pounds.  Tr. 29.  Smith's medical records from earlier in the year documented Smith's height as 5'3" and her weight as 205 pounds. Tr. 235.  A person with that height and weight has a body mass indicator (BMI) of 36.3.  A person with a BMI of over 30 is considered obese.  *See* 4 *The Gale Encyclopedia of Med*. 3116 (4th ed. 2011) (characterizing a BMI of over 30 as obese); *see also* 10-78A Stephen Londe, *Attorneys' Textbook of Med*. P 78A.00 (3d ed.) (characterizing a BMI of over 25 as obese because that is the BMI level above which health risks increase).  Thus, the record before the ALJ already showed that Smith was obese.

The record contained substantial evidence supporting the ALJ's step-two determination that Smith's ability to work was impaired by obesity because it contained evidence of Smith's weight.  The evidence of Smith's weight also supported the ALJ's step-four determination that Smith's ability to work is limited because obesity can cause functional limitations "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 02-1p; *Titles II & XVI: Evaluation of Obesity*, 67 Fed. Reg. 57859-02, 57862 (Sept. 12, 2002).  *See* 4 *The Gale Encyclopedia of Med*. 3116 (4th ed. 2011) (describing how obesity stresses the body's organs and increases the risk of problems

like fatigue and poor physical fitness).  The ALJ limited Smith in each of those functional areas.  Tr. 16.

The only thing new about Dr. Chakales's treatment note was the result of a physical examination.  Dr. Chakales found diminished to normal reflex in Smith's knees and ankles, a diminished range of motion in Smith's lumbar spine—specifically, 50 degrees forward flexion with 60 degrees being normal and 10 degrees lateral flexion with 25 degrees being normal—and sciatic pain when the right leg was raised 30 degrees.  Those findings might suggest a compromised spinal nerve root, but Dr. Chakales did not make that finding and no diagnostic test confirmed a compromised spinal nerve root.  Instead, Dr. Chakales prescribed pain pills and muscle relaxers, and recommended a weight loss of 100 pounds. Tr. 178.  Although Smith suggested Dr. Chakales's findings require a remand to determine whether her back condition met listing 1.04, remand is not required in the absence of evidence of nerve root or spinal cord compression, spinal arachnoiditis, or lumbar spinal stenosis.  *See* 20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.04 (specifying the requirements for disorders of the spine).

To the extent Smith maintained the recommendation for weight loss requires a remand, the ALJ included obesity in Smith's impairments.  Moreover, Smith did not attribute disability to obesity.  She cannot complain about that now.  *Accord Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (stating that claimant who did not allege functional limitation due to obesity in benefits application or during the hearing waived

argument that the ALJ erred by failing to consider obesity).  The Commissioner did not err in considering Smith's new evidence.

## CONCLUSION

Having determined that substantial evidence supports the Commissioner's denial of Smith's applications for disability benefits, and that the Commissioner made no legal error, the Court DENIES Smith's request for relief (Document #2) and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 15th day of June, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE